1

2

3

4

5

6

7                                 DISTRICT COURT OF GUAM

8

9    UNITED STATES OF AMERICA,

10                                          Criminal Case No. 97-00095
          Plaintiff,                        Civil Case No. 08-00015

11        vs.
                                            OPINION AND ORDER RE: MOTION UNDER
12   ROY TOVES CABACCANG,                   28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR
                                            CORRECT SENTENCE AND ORDER RE:
13        Defendant.                        CERTIFICATE OF APPEALABILITY

14

15

16        Before the court is Petitioner Roy Toves Cabaccang's 28 U.S.C. § 2255 Motion to

     Vacate, Set Aside, or Correct Sentence.[1]  *See* Docket No. 512.  He is proceeding *pro se* in this
17

18 _____

19        [1]  The Petitioner has requested an evidentiary hearing on his motion.  Under 28 U.S.C. §
     2255, an evidentiary hearing shall be held "[u]nless the motion and the files and record of the case
20   conclusively show that the prisoner is entitled to no relief."  As stated in *United States v. Hearst*, 638
     F.2d 1190 (9th Cir. 1980):

21
          The standard is essentially whether the movant has "stated a claim on which relief
22        could be granted," *Moore v. United States*, 571 F.2d 179, 184 (3rd Cir. 1978) – or,
          where affidavits have been submitted, whether summary judgment for the
23        government is proper. *See also* Fed.R.Civ.P. 12(b), 56. . . .

24        The Ninth Circuit's rule is that "merely conclusionary statements in a §2255 motion
          are not enough to require a hearing."  *Wagner v. United States*, 418 F.2d 618, 621
25        (9th Cir. 1969).

26
     *Hearst*, 638 F.2d at 1194.  The Ninth Circuit described the standard as follows:  "Where a prisoner's
27   motion presents no more than conclusory allegations, unsupported by facts and refuted by the
     record, an evidentiary hearing is not required."  *United States v. Quan*, 789 F.2d 711, 715 (9th Cir.

28

1  case. See Docket No. 512. After reviewing the parties' submissions, as well as relevant caselaw

2  and authority, the court **HEREBY DENIES** the motion and enters a final order adverse to the

3  Petitioner, and **DENIES** a certificate of appealability pursuant to Rule 11 of the Rules Governing

4  Section 2255 Proceedings for the United States District Courts.

5  **I. PROCEDURAL AND FACTUAL BACKGROUND**

6        The Petitioner Roy Toves Cabaccang ("the Petitioner"), with his brothers James Toves

7  Cabaccang and Richard Toves Cabaccang, were indicted on May 9, 1997 in the District Court of

8  Guam on numerous charges relating to a drug trafficking ring that involved the transport of

9  methamphetamine from California to Guam in the early and mid-1990s.[2] After a lengthy jury

10  trial, the three brothers were convicted of all the charges against them. The Petitioner was

11  sentenced to life imprisonment for Counts I, V, VI, IX, X and XI. The District Court vacated

12  the convictions related to Counts II and III as they were lesser included offenses of Count I,

13  pursuant to the United States Supreme Court's holding in *Rutledge v. United States*, 517 U.S.

14  292 (1996). *See* Docket No. 410.

15        Thereafter, the Petitioner and his brothers appealed their convictions. They raised

16  numerous grounds for reversal, including *inter alia*, the argument that the transport of drugs

17  from California to Guam did not constitute importation, insufficiency of evidence, ineffective

18

19  1986) (citing *Farrow v. United States*, 580 F.2d 1339, 1360-61 (9th Cir. 1978) (en banc)).

20       Based on the analysis herein, the Petitioner's motion is "no more than conclusory allegations,
    unsupported by facts and refuted by the record." *United States v. Quan*, 789 F.2d 711, 715.

21  Accordingly, his request for an evidentiary hearing is denied.

22      [2] In a twelve-count Amended Indictment, Roy was charged with Continuing Criminal

23  Enterprise (Count I), Conspiracy to Distribute Methamphetamine (Count II), Conspiracy to Import
    Methamphetamine (Count III), Conspiracy to Launder Money Instruments (Count IV), Importation

24  of Methamphetamine (Count V), Possession of Methamphetamine with Intent to Distribute (Count
    VI), Possession and Receipt of a Firearm by a Felon (Counts VII, VIII and IX), and Attempted

25  Importation of Methamphetamine (Counts X, XI, and XII). Richard was charged with Conspiracy
    to Distribute Methamphetamine (Count II), Conspiracy to Import Methamphetamine (Count III),

26  Conspiracy to Launder Money Instruments (Count IV), and Importation of Methamphetamine

27  (Count V). James was charged with Conspiracy to Distribute Methamphetamine (Count II),
    Conspiracy to Import Methamphetamine (Count III), and Conspiracy to Launder Money Instruments

28  (Count IV).

assistance of counsel, and erroneous jury instructions. A three-judge panel affirmed the convictions in an unpublished decision. *See United States v. Cabaccang*, 16 Fed. Appx. 566, 568, 2001 WL 760553 (9th Cir. 2001). The panel later issued a supplemental unpublished opinion, addressing the Petitioner's and his brothers' challenges to their convictions based on *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and again affirming the convictions. *See United States v. Cabaccang*, 36 Fed. Appx. 234, 2002 WL1192886 (9th Cir. 2002).

The Petitioner and his brothers then sought a rehearing, which was granted by the Ninth Circuit in *United States v. Cabaccang*, 332 F.3d 622 (9th Cir. 2003) (*Cabaccang I*). In *Cabaccang I*, the Ninth Circuit examined the argument of whether the transport of drugs on a nonstop flight from one location in the United States (California) to another (Guam) constituted importation within the meaning of 21 U.S.C. § 952(a), when the drugs had traveled through international airspace en route to Guam. *Id.* at 624. The Ninth Circuit agreed with the Petitioner's argument, stating that its "holding addresses those cases in which the undisputed evidence shows that the nonstop flight on which the defendant transported drugs departed and landed in the United States." *Id.* at 635. As to the Petitioner, the Ninth Circuit reversed the importation related-convictions; specifically, Conspiracy to Import Methamphetamine (Count III), Importation of Methamphetamine (Count V), and Attempted Importation of Methamphetamine (Counts X, XI, and XII). *See id.* at 637. In addition, the Ninth Circuit remanded the issue of whether the Petitioner's conviction of continuing criminal enterprise (Count I) could stand in light of the reversal of the importation counts. *Id.*

The Petitioner then requested clarification of the Ninth Circuit's remand as to his conviction and sentence of Possession of Methamphetamine with Intent to Distribute (Count VI), as well as his brothers' convictions and sentences of conspiracy to distribute methamphetamine. In ruling on the request for clarification, the Ninth Circuit granted the remand as to the Petitioner's possession charge (Count VI), but denied remand as to his brothers' charges. *See United States v. Cabaccang*, 341 F.3d 905 (9th Cir. 2003) (*Cabaccang II*).

On remand, the Petitioner and his brothers were resentenced by the District Court of Guam on May 6, 2005. *See* Docket Nos. 494 and 495. The court vacated the Petitioner's

1  conviction on Count I, and imposed a sentence of life imprisonment as to Count II, and twenty

2  years of imprisonment as to Count VI. *See* Docket No. 494, p. 51. The court on remand also

3  imposed a term of ten years supervised release, to follow the sentence in Count VI. *See* Docket

4  No. 494, p. 51. The Petitioner again appealed. The Ninth Circuit affirmed the Petitioner's

5  conviction on June 26, 2007. *See United States v. Cabaccang*, 481 F.3d 1176 (9th Cir. 2007)

6  (*Cabaccang III*). Docket No. 506. The Petitioner sought certiorari from the United States

7  Supreme Court. The Court denied his petition on October 1, 2007. *See* Docket No. 521, Exh. 6.

8      The Petitioner timely filed the instant § 2255 motion in this court on October 1, 2008.[3]

9  *See* Docket No. 512. The Government filed its response to the motion on January 29, 2009, and

10  a supplemental response on January 30, 2009. *See* Docket Nos. 521 and 522. Subsequently, the

11  Petitioner filed his memoranda of law and authorities in support of his motion on February 25,

12  2009. *See* Docket No. 525.

13  **II. DISCUSSION**

14      In his § 2255 motion, the Petitioner challenges the representation by his trial counsel,

15  resentencing counsel, and appellate counsel in his first and second appeal. The court addresses

16  the following claims of ineffective assistance of counsel:

17      1.      Whether the failure of resentencing counsel to request dismissal of Count II
               (Conspiracy), and the failure of appellate counsel to argue this error on appeal,
18             constitutes ineffective assistance of counsel

19

20

21  [3] The court notes that the Petitioner filed motions for extension of time to file his § 2255 motion, as the correctional facility was placed in "lockdown" from June 20, 2008 to September 7, 2008 due to an "institution emergency." *See* Docket Nos. 508 and and 510.

22      An extension of time however, is not necessary and the court finds these motions to be moot. Because the Petitioner sought certiorari review from the United States Supreme Court, the § 2255 petition had to be filed within one year of either "the conclusion of direct review by the highest court, including the United States Supreme Court, to review the judgment" or "the expiration of the time to seek such review." *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001); *see also United States v. Garcia*, 210 F.3d 1058 (9th Cir. 2000). The United States Supreme Court denied the Petitioner's petition for certiorari on October 1, 2007. His § 2255 motion needed to be filed within one year of this date. Although his motion herein was received by the court on October 1, 2008, it is clear this motion was given to prison officials for mailing, and thus, under *Houston v. Lack*, 487 U.S. 266 (1988), his motion is presumed to be filed when given to prison officials for mailing.

23

24

25

26

27

28

2.  Whether trial counsel's failure to challenge the jury instruction relating to Count I was ineffective assistance of counsel

3.  Whether trial counsel's failure to request a change of venue amounts to ineffective assistance of counsel

4.  Whether trial counsel's failure to challenge the amount of drugs and drug proceeds established ineffective assistance of counsel

5.  Whether trial counsel's failure to present witnesses constituted ineffective assistance of counsel

6.  Whether trial counsel's failure to request dismissal of one charge was ineffective assistance of counsel

7.  Whether trial counsel's failure to explore the possibility of a plea agreement established ineffective assistance of counsel

8.  Whether trial counsel's failure to request jury sequestration amounts to ineffective assistance of counsel

9.  Whether trial counsel's failure to object to the prosecutor's statements to the jury regarding the special allegations constitutes ineffective assistance of counsel

10. Whether trial counsel's failure to elicit certain testimony from a Government witness amounts to ineffective assistance of counsel

11. Whether trial counsel's failure to request a mistrial after certain media reports constitutes ineffective assistance of counsel

12. Whether trial counsel's failure to investigate and properly prepare for trial amounts to ineffective assistance of counsel

13. Whether counsels' failure to argue that the original sentence was unconstitutional proved to be ineffective assistance of counsel

*See* Docket No. 525.

In its response, the Government contends dismissal of grounds 1, 2, 6, 7, 9, 10, and 13 because they are meritless in light of the law and the record. *See* Docket No. 521. The Government suggested that the Petitioner be required to state with particularity any facts that support grounds 3, 4, 5, 8, 11 and 12, and if he is unable to do so, then the court should dismiss these grounds as well. *See id.*

**A. The law on ineffective assistance of counsel**

The Petitioner argues that the performance of his counsel during the trial, resentencing, and first and second appeal were so ineffective that, in essence, he was denied his constitutional right to counsel. The law regarding ineffective assistance of counsel is well settled. A two-

1    prong test has been articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), which states

2    that to establish a claim of ineffective assistance of counsel, a petitioner must show both

3    deficient performance by counsel (the "incompetence prong"), and that such deficient

4    performance prejudiced his defense (the "prejudice prong"). *Id.* at 687.

5      To demonstrate deficient performance by his counsel, or the incompetence prong, the

6    Petitioner must show his counsel's performance was "outside the wide range of professional

7    competent assistance." *Id.* at 690. "A convicted defendant making a claim of ineffective

8    assistance must identify the acts or omissions of counsel that are alleged not to have been the

9    result of reasonable professional judgment." *Id.* at 690. He must show that his counsel's

10   performance failed to meet an objective standard of reasonableness. *Id.* at 689.

11     Under the prejudice prong, the Petitioner "must show that there is a reasonable

12   probability that, but for counsel's unprofessional errors, the result of the proceeding would have

13   been different." *Id.* at 694. That is, he must demonstrate "that counsel's errors were so serious as

14   to deprive [him] of a fair trial." *Id.* at 687. "An error by counsel, even if professionally

15   unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error

16   had no effect on the judgment." *Id.* at 691.

17     To succeed on a claim of ineffective assistance of counsel, a petitioner must satisfy both

18   prongs of the *Strickland* test. *See id.* at 700. However, the court's analysis of an ineffective

19   assistance of counsel claim does not require the mechanical application of the standards

20   articulated in *Strickland*. *Id.* at 696. The *Strickland* Court explained:

> [T]here is no reason for a court deciding an ineffective assistance claim to
> approach the inquiry in the same order or even to address both components of the
> inquiry if the defendant makes an insufficient showing on one. In particular, a
> court need not determine whether counsel's performance was deficient before
> examining the prejudice suffered by the defendant as a result of the alleged
> deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground
> of lack of sufficient prejudice, which we expect will often be so, that course
> should be followed. Courts should strive to ensure that ineffectiveness claims not
> become so burdensome to defense counsel that the entire criminal justice system
> suffers as a result.

*Id.* at 697. Furthermore, in evaluating a claim of ineffective assistance of counsel, the court

"should recognize that counsel is strongly presumed to have rendered adequate assistance and

1   made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

2   As stated by the Ninth Circuit, "we 'indulge a strong presumption that counsel's conduct falls

3   within the wide range of reasonable professional assistance; that is, the defendant must overcome

4   the presumption that, under the circumstances, the challenged action might be considered sound

5   trial strategy.'" *Jones v. Ryan*, 583 F.3d 626, 636-37 (9th Cir. 2009) (quoting *Strickland*, 466

6   U.S. at 689 (citation and quotation marks omitted)).  "A fair assessment of attorney performance

7   requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct

8   the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

9   perspective at the time." *Strickland*, 466 U.S. at 689.

10      Thus, the court must examine the merits of each of the Petitioner's claims of ineffective

11  assistance of counsel to determine whether he has made a showing of deficient performance and

12  prejudice, and whether he has overcome the "strong presumption" that counsel has provided him

13  with "adequate assistance."

14      **1.  Whether the failure of resentencing counsel to request dismissal of Count**

15  **II (Conspiracy), and the failure of appellate counsel to argue this error on appeal,**

16  **constitutes ineffective assistance of counsel**

17      The District Court appointed counsel to represent the Petitioner during his resentencing

18  proceeding ("resentencing counsel"). *See* Docket No. 445.  Subsequently, the Ninth Circuit

19  appointed another attorney to represent the Petitioner in his second appeal ("appellate counsel").

20  *See* Docket No. 503.  The Petitioner challenges the performance of both these attorneys, arguing

21  they were ineffective.  First, he contends resentencing counsel should have requested dismissal

22  of Count II (Conspiracy) after the Ninth Circuit vacated Count I (Continuing Criminal

23  Enterprise), and should have objected to the court's use of its findings of quantity arising from

24  Count I during the resentencing on Count II.  Second, he argues that his appellate counsel was

25  ineffective in failing to raise these arguments.  According to the Government, resentencing

26  counsel was not incompetent in not making this request, as the motion to dismiss would have

27  been denied.   The Government does not address the Petitioner's contention as to the failure of

28  appellate counsel to make this argument in the second appeal.

**a. Whether the performance of resentencing counsel was ineffective**

Contrary to the Petitioner's contention, it is undisputed that the Ninth Circuit did not vacate his conviction on Count I. Rather, the Ninth Circuit in *Cabaccang I* remanded the case to the District Court for a determination of whether the conviction of Count I could stand in light of the reversal of the importation counts. *See Cabaccang I*, 332 F.3d 622. On remand, it was the District Court that vacated his conviction on Count I during the resentencing hearing. *See* Docket No. 495, Transcript of Proceedings, May 6, 2005, p. 27. While his arguments are confusing, this court must interpret the Petitioner's *pro se* pleadings liberally. *See Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam). Therefore, this argument will be construed as a claim of ineffective assistance of resentencing counsel for failing to seek dismissal of Count II after the resentencing court had vacated the conviction of Count I, and for failing to object to the use of drug quantity findings relating to Count I during the resentencing hearing on Count II.

As noted above, the Petitioner must satisfy both the incompetence prong and the prejudice prong to succeed on his claim of ineffective assistance of counsel. In this case, he argues that resentencing counsel was ineffective in failing to seek dismissal of Count II. The Petitioner does not discuss the grounds resentencing counsel failed to raise during the resentencing hearing in support of dismissal of Count II. Indeed, there are no such grounds that would warrant dismissal of Count II. The Petitioner was convicted of Count II, but because Count II is a lesser included offense of Count I, the District Court entered final judgment only on the greater offense (Count I) and vacated the lesser included offense (Count II) as instructed by the United States Supreme Court in *Rutledge*, 517 U.S. 292.

The Ninth Circuit in *Cabaccang III* held that it was proper for the court on remand to reinstate the Petitioner's conviction as to Count II and to sentence him on that count: "[T]he district court correctly reinstated Roy's previously-vacated conspiracy conviction [on Count II] after vacating his CCE conviction [on Count I] on grounds that did not affect the lesser-included conspiracy conviction." *Cabaccang III*, 481 F.3d at 1184. Because there were no grounds to support an argument by Petitioner's counsel that the jury's conviction of Count II should be

1    dismissed, resentencing counsel's performance was not deficient when he did not request

2    dismissal.   The Petitioner has not overcome the "strong presumption that counsel's conduct falls

3    within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and

4    consequently, he fails to satisfy the "incompetence prong" of the *Strickland* test.

5          Furthermore, even assuming *arguendo* that counsel requested dismissal of Count II

6    during the resentencing hearing, the outcome of the resentencing hearing would not have been

7    different.  The Ninth Circuit did not conclude that when a conviction on a greater offense is

8    reversed, the district court on remand is to dismiss the lesser included offense.  Rather, the Ninth

9    Circuit held it was "the correct outcome" for the district court to reinstate the conviction of the

10   lesser included offense.  *See Cabaccang III*, 481 F.3d at 1183.  This is precisely what the

11   resentencing court did.  Therefore, the Petitioner is also unable to satisfy the "prejudice prong"

12   because the outcome of the resentencing hearing would not have been different.

13         Next, the Petitioner argues that resentencing counsel's performance was deficient

14   because he failed to object to the resentencing court's use of its findings of drug quantity arising

15   from Count I when the court imposed his sentence in Count II.  He argues that "the finding [of

16   drug quantity] on Count I is specific to that count" and that "the findings from Count I should

17   not have been allowed to form the basis for the life sentence on Counts II and VI."  *See* Docket

18   No. 525, p. 22.  The Petitioner had already raised this precise argument, without success, in his

19   second appeal.  The Petitioner had argued that the District Court "erroneously relied on jury

20   findings relating to Count I in imposing his Count II sentence."  *Cabaccang III*, 481 F.3d at

21   1184.  The Ninth Circuit rejected his argument, stating:

22         When the jury found Roy guilty of Count I, CCE, the jury also found that "the
           violations referred to in Count I involved at least 3,000 grams of
23         methamphetamine, or at least 30,000 grams of mixture or substance containing a
           detectable amount of methamphetamine." Count II was alleged in the indictment
24         to be one of the violations constituting the CCE [in Count I].  The jury verdict
           form therefore provides on its face  that the drug quantity finding in Count I
25         applies to each of the other counts.

26         We agree with the careful reasoning of the district court in concluding that the
           special allegation findings were not tainted by the importation offenses. . . .
27
           . . . .
28

1
2

> Whether or not the drugs were "imported" in the legal sense does not affect the jury's finding that Roy's conduct – all of which came within the scope of the conspiracy charge – involved at least 3,000 grams of methamphetamine.

3   *Cabaccang III*, 481 F.3d at 1184-85.  It is not ineffective assistance of counsel when an attorney

4   does not make an argument that "would not have been successful," *Morrison v. Estelle*, 981 F.2d

5   425, 429 (9th Cir.1992), or when counsel fails to make a futile motion.  *See James v. Borg*, 24

6   F.3d 20, 27 (9th Cir. 1994).  Based on the Ninth Circuit's analysis in *Cabaccang III* (the

7   Petitioner's second appeal), even if resentencing counsel had made this argument during the

8   resentencing hearing, this argument would eventually have been rejected.  "The failure to raise a

9   meritless legal argument does not constitute ineffective assistance of counsel."  *Bauman v.*

10  *United States*, 692 F.2d 565, 572 (9th Cir. 1982).  Therefore, the Petitioner has failed to satisfy

11  the incompetence prong under *Strickland.*  In sum, the performance of counsel during

12  resentencing has not been proven to be ineffective.

13          **b.  Whether the performance of appellate counsel  was ineffective**

14          The Petitioner also argues that appellate counsel was ineffective in failing to argue in the

15  second appeal that it was error for the trial court to use the findings from Count I in imposing the

16  sentence in Count II.  The Government does not address this argument.

17          The Petitioner's argument is without merit and is contradicted by the record.  The Ninth

18  Circuit addressed this very argument in the Petitioner's second appeal, and soundly rejected it,

19  stating:  "Whether or not the drugs were 'imported' in the legal sense does not affect the jury's

20  finding that Roy's conduct – all of which came within the scope of the conspiracy charge –

21  involved at least 3,000 grams of methamphetamine."  *See Cabaccang III*, 481 F.3d at 1185.

22  Therefore, even if counsel had made this argument, the outcome would not have been different.

23  The Petitioner fails to show that he was prejudiced by the performance of appellate counsel.

24          "[A] court need not determine whether counsel's performance was deficient before

25  examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it

26  is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

27  which we expect will often be so, that course should be followed."  *Strickland*, 466 U.S. at 697.

28          Accordingly, the court will follow the course set forth in *Strickland*, and finds that the

1    Petitioner has not demonstrated ineffective assistance of counsel.

2        **2.    Whether trial counsel's failure to challenge the jury instruction relating to**

3    **Count I was ineffective assistance of counsel**

4        Petitioner next argues trial counsel was ineffective when he did not challenge the jury

5    instruction relating to Count I, specifically, the instruction that stated in order to find him guilty

6    of the offense in Count I, the jury was required to make a finding that the defendant committed

7    three other drug-related crimes.  In analyzing this argument, the court "must indulge a strong

8    presumption that counsel's conduct falls within the wide range of reasonable professional

9    assistance."  *Strickland*, 466 U.S. at 689.  The Petitioner "bears the heavy burden of proving that

10   counsel's assistance was neither reasonable nor the result of sound trial strategy." *Matylinsky v.*

11   *Budge*, 577 F.3d 1083, 1091 (9th Cir. 2009) (quoting *Murtishaw v. Woodford*, 255 F.3d 926, 939

12   (9th Cir. 2001)).  The Government asks the court to reject this claim, and points out that the

13   instruction was approved by the Ninth Circuit as Model Criminal Jury Instruction 9.26.  Indeed,

14   this instruction is still in use as the Ninth Circuit's model criminal jury instruction for

15   Continuing Criminal Enterprise.  *See* 9th Cir. Model Criminal Jury Instructions.

16       "An ineffective assistance of counsel claim based on counsel's failure to object to a jury

17   instruction requires a showing of prejudice."  *James*, 24 F.3d at 27.  On remand, the District

18   Court vacated the conviction onCount I, and the Judgment ultimately entered against the

19   Petitioner does not reflect that he was convicted or sentenced on Count I.  Therefore, because the

20   Judgment makes no reference to Count I at all, the Petitioner cannot demonstrate that he was

21   prejudiced when trial counsel failed to object to the use of the jury instruction on Count I.  As set

22   forth by the Ninth Circuit in *James*, because the Petitioner makes no showing of prejudice, he

23   cannot show that trial counsel was ineffective in failing to object to the jury instruction on Count I.

24   *See id.*  Accordingly, the court finds there was no ineffective assistance of counsel in this regard.

25       **3.    Whether trial counsel's failure to request a change of venue amounts to**

26   **ineffective assistance of counsel**

27       The Petitioner contends that it was error for trial counsel to fail to request a change of

28   venue based on the media coverage of the case, because it was impossible to seat an impartial

1  jury and the jury was biased against him.  The Government argues that the Petitioner has not met

2  his burden of proving that a change of venue was justified, and requests that this ground for

3  relief be denied.

4      Due process requires a change of venue be granted when a trial court cannot seat an

5  impartial jury because of "prejudicial pretrial publicity or an inflamed community atmosphere."

6  *Turner v. Calderon*, 281 F.3d 851, 865 (9th Cir. 2002).  The Ninth Circuit "require[s] a

7  petitioner to show that prejudice should be presumed or that actual prejudice existed."  *Id.*

8  Further, the court has held that:  "Prejudice is presumed only in extreme instances 'when the

9  record demonstrates that the community where the trial was held was saturated with prejudicial

10 and inflammatory media publicity about the crime.'"  *Daniels v. Woodford*, 428 F.3d 1181, 1211

11 (9th Cir. 2005) (quoting *Ainswoth v. Calderon*, 138 F.3d 787, 795 (9th Cir. 1998) *as amended*

12 152 F.3d 1223).  The court articulated the following test:

13      Three factors should be considered in determining presumed prejudice: (1)
        whether there was a "barrage of inflammatory publicity immediately prior to trial,
14      amounting to a huge ... wave of public passion"; (2) whether the news accounts
        were primarily factual because such accounts tend to be less inflammatory than
15      editorials or cartoons; and (3) whether the media accounts contained
        inflammatory or prejudicial material not admissible at trial.

16 *Id.*  The Petitioner does not show any specific facts for this court to conclude that prejudice

17 should be presumed, yet he urges this court to apply the presumption.  Applying these factors

18 here reveals that the Petitioner cannot satisfy the test for presuming prejudice.  First, nothing in

19 the record supports a finding that there was a "barrage of inflammatory publicity" that amounted

20 to a "huge . . . wave of public passion."  *Id.*  The Petitioner includes what appears to be a partial

21 transcription of one news media report.  In this transcription, the news reporter summarizes the

22 allegations of the charges that there was a "drug ring," and discusses the trial schedule and

23 security concerns raised.  Docket No. 525, p. 34.  The Petitioner also refers to a statement made

24 by the presiding judge as to the "alleged drug ring" and the potential harm to witnesses.  Docket

25 No. 525, p. 34-35.  He offers only conclusory statements alleging a "firestorm" of media

26 coverage, but makes no showing of  a "wave of public passion."  Second, and significantly, the

27 Petitioner himself concedes that"many of the articles" about the Petitioner "were factual."

28

1   Docket No. 525, p. 35. Third, the Petitioner has not shown media accounts containing

2   inflammatory or prejudicial material not admissible at trial. Clearly, this is not an instance

3   where prejudice could be presumed.

4        Furthermore, the Petitioner has not shown the existence of actual prejudice that

5   influenced the jury. "To demonstrate actual prejudice, [a petitioner] must show that 'the jurors

6   demonstrated actual partiality or hostility that could not be laid aside.'" *Daniels*, 428 F.3d at

7   1211 (quoting *Harris v. Pulley*, 885 F.2d 1354, 1363 (9th Cir. 1988)). The Petitioner seemingly

8   argues that the media coverage influenced the jurors to convict him; he offers nothing as to

9   whether the jurors showed actual partiality or hostility. Notably, the Petitioner ignores the

10   substantial evidence against him, including the testimony of 22 informants who testified to his

11   drug trafficking scheme, that led to his conviction.

12        The court is not persuaded by the Petitioner's argument. As discussed above, the court

13   finds that the Petitioner has failed to demonstrate that prejudice should be presumed or that

14   actual prejudice existed to support a request for a change in venue. Therefore, trial counsel

15   provided adequate assistance when he did not make a motion for a change of venue, because

16   there were no grounds to support such a request. In sum, such failure to satisfy both the

17   incompetence prong and prejudice prong of *Strickland* defeats the ineffectiveness claim.

18        **4. Whether trial counsel's failure to challenge the amount of drugs and drug**

19   **proceeds established ineffective assistance of counsel**

20        The court next examines the Petitioner's allegations that his trial counsel failed to

21   challenge or object to the drug quantity and the amount of drug proceeds alleged by the

22   Government and the Government witnesses. The Government objects to the Petitioner's vague

23   statements, and contends that the Petitioner should be required to make more specific arguments.

24        In evaluating a claim of ineffective assistance of counsel, the court keeps in mind that the

25   Petitioner must overcome the "strong presumption that counsel's conduct falls within the wide

26   range of reasonable professional assistance; that is, the defendant must overcome the

27   presumption that, under the circumstances, the challenged action might be considered sound trial

28   strategy." *Jones v. Ryan*, 583 F.3d 626, 636-37 (9th Cir. 2009) (quoting *Strickland*, 466 U.S. at

1  689 (citation and quotation marks omitted)).  The court remains mindful that deference must be

2  granted to counsel's decisions.  "Because advocacy is an art and not a science, and because the

3  adversary system requires deference to counsel's informed decisions, strategic choices must be

4  respected in these circumstances if they are based on professional judgment." *Strickland*, 466

5  U.S. at 681.

6  The Petitioner contends that he should not have been sentenced on the basis of all the

7  drugs involved in the conspiracy.  He argues that there should have been an individual

8  determination of the specific amounts for which he was accountable.  He contends that his trial

9  counsel erred in failing to object to the court holding the Petitioner accountable for all the sales

10  made a result of the conspiracy.

11  The Petitioner relies on *United States v. Petty*, 992 F.2d 887 (9th Cir. 1993), wherein the

12  Ninth Circuit addressed the issue of the quantity of drugs that is to be attributed to a conspirator

13  in a drug conspiracy.  One appellant, Jordan Quintal, was involved in a single sale of three

14  kilograms of cocaine to Donald Kessack that occurred in the last three months of the five-year

15  conspiracy.  *Id*. at 888.  However, Quintal's sentence was based on a conspiracy involving

16  distribution of 15 to 49 kilograms of cocaine.  *Id*. at 888.  The other appellant Robert M. Petty

17  was a "founding member of the conspiracy," and argued that he should not have been sentenced

18  on the basis of the cocaine Kessack had obtained from another drug dealer, who was Petty's

19  direct competitor.  *Id.* at 888.  The Ninth Circuit vacated the conviction, stating:  "Under the

20  Guidelines each conspirator, for sentencing purposes, is to be judged not on the distribution

21  made by the entire conspiracy but on the basis of the quantity of drugs which he reasonably

22  foresaw or which fell within 'the scope' of his particular agreement with the conspirators." *Id.* at

23  890.  The court remanded, noting that Quintal may not have foreseen the drugs distributed before

24  he joined the conspiracy, and the scope of his agreement in the conspiracy may or may not have

25  been retrospective.  *Id.* at 891.  The court further noted that Petty may or may not have foreseen

26  the drug transactions between Kessack and the competing drug dealer, and these drug

27  transactions may or may not have been within the scope of his agreement.  *Id.*

28  The court finds *Petty* inapposite.  The allegations in the Superseding Indictment do not

1   allege that the Petitioner was involved in a single transaction (like Quintal), or that the amount of

2   drugs stem from sales involving a competing drug dealer (like Petty).  Here, 24 volumes of trial

3   transcripts memorializes the testimony of the 44 Government witnesses and the hundreds of

4   exhibits that were used during the course of the eight-week trial.  There was both live and

5   stipulated testimony from law enforcement officers.  The testimony of 22 informant witnesses, as

6   well as the voluminous documentary evidence, revealed that the Petitioner had virtually total

7   control of the drug transactions in the conspiracy, including but not limited to the transactions

8   alleged in the Superseding Indictment.  Thus, the ruling in *Petty* does not control this case, and

9   the court rejects the Petitioner's contention that there should have been an individual

10  determination of the specific amounts of drugs for which he was accountable.

11         The court therefore evaluates the Petitioner's argument in light of the strong presumption

12  that counsel was relying on sound trial strategy in making his decisions as to evidence of the

13  quantity of the drugs and drug proceeds.  The court is aware that "[t]here are countless ways to

14  provide effective assistance in any given case. Even the best criminal defense attorneys would

15  not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.  Here, the Petitioner

16  fails to explain how counsel could have better challenged the overwhelming evidence against

17  him.  The Government presented informant witnesses who testified, *inter alia*, that they had

18  body-carried methamphetamine from California for the Petitioner, had received drugs in the

19  mail, had sent Western Union transfers, and obtained cashier's checks, and had been instructed

20  by the Petitioner to say the money was related to cockfighting or other gambling.  In addition,

21  the Government introduced as exhibits the 1,326 grams of methamphetamine analyzed by the

22  Drug Enforcement Agency crime lab.  *See* Docket No. 521.  Furthermore, the amount of money

23  alleged by the Government was based on documentary evidence, including cash, more than 300

24  Western Union money transfer receipts that totaled more than $1 million dollars, and $274,000

25  in cashier's checks.  *See* Docket No. 412, Trial Transcript Volume XXI, p. 3753.  The Petitioner

26  does not argue how his trial counsel could have better challenged the testimony of the witnesses,

27  or the amount of methamphetamine that had been seized during the course of the investigation

28  and admitted as evidence, or the documentary evidence presented by the Government during the

1   course of the lengthy trial.

2       A thorough review of the record reveals that counsel made decisions based on sound trial

3   strategy.  He conducted cross-examination of nearly all the 22 informant witnesses, and where

4   relevant, he challenged their testimony regarding the drugs and the drug proceeds.  The

5   Petitioner has not shown that his trial counsel's performance was "outside the wide range of

6   professional competent assistance."  *Strickland*, 466 U.S. at 690.  Accordingly, the court finds

7   there was not ineffective assistance of counsel when Petitioner has failed to make the required

8   showing of deficient performance.

9       **5.  Whether trial counsel's failure to present witnesses constituted ineffective**

10  **assistance of counsel**

11      The Petitioner next argues that his trial counsel's performance was deficient because he

12  did not present any witnesses during the trial.  The Petitioner simply asserts that there were many

13  witnesses available who should have been interviewed and who should have been called to

14  testify on his behalf.  The Government contends that without any specific information about the

15  witnesses or their testimony, this ground should be denied.

16      "The United States Supreme Court has said that counsel need not undertake exhaustive

17  witness investigation.  The question is not 'what is prudent or appropriate, but only what is

18  constitutionally compelled.'"  *Matylinsky*, 577 F.3d at 1092 (quoting *Burger v. Kemp*, 483 U.S.

19  776, 794 (1987)).  Furthermore, the Ninth Circuit has held that "counsel need not interview

20  every possible witness to have performed proficiently."  *See Riley v. Payne*, 352 F.3d 1313, 1318

21  (9th Cir. 2003).

22      The Petitioner challenges his trial counsel's decision not to call witnesses, and makes

23  vague assertions about potential witnesses who should have been investigated or called in his

24  defense.  He states that there were "disinterested" witnesses whose names could have been found

25  in police reports, and whose "testimony was not repetitive" or cumulative, and was "potentially

26  exculpatory."  *See* Docket No. 511.

27      Under *Strickland*, "[a] convicted defendant making a claim of ineffective assistance must

28  identify the acts or omissions of counsel that are alleged not to have been the result of reasonable

1   professional judgment. The court must then determine whether, in light of all the circumstances,

2   the identified acts or omissions were outside the wide range of professionally competent

3   assistance." 488 U.S. at 690. Here, the Petitioner does not name these witnesses that should

4   have been called and does not articulate the testimony they would have presented. His

5   arguments are "mere conclusory statements" which do not satisfy the standard under *Strickland*.

6   *See Jones v. Gomez*, 66 F.3d 199, 204-205 (9th Cir. 1995) (stating that conclusory allegations of

7   ineffective assistance of counsel are insufficient to support a valid constitutional violation).

8       Courts are to give "deference to counsel's informed decisions." *Strickland*, 466 U.S. at

9   681. Here, trial counsel made a strategic decision, and the Petitioner makes no showing this

10  decision was "outside the wide range of professional competent assistance." *Id.* at 689. The

11  Petitioner has not overcome the strong presumption that counsel was relying on sound trial

12  strategy in this regard. Therefore, the court finds there was not ineffective assistance of counsel.

13      **6. Whether trial counsel's failure to request dismissal of one charge was**

14  **ineffective assistance of counsel**

15      The Petitioner next contends that his trial counsel was incompetent in failing to request

16  dismissal of one of the charges, Possession of Methamphetamine with Intent to Distribute (Count

17  VI), which arises from the discovery of 21.19 grams of methamphetamine in the Petitioner's

18  briefcase that was recovered from a vehicle driven by Government witness Doris Cruz ("Cruz"),

19  who was one of the Petitioner's girlfriends. *See* Trial Transcript Volume V, pp. 1015, 1044,

20  1048-49.

21      The Petitioner argues that his trial counsel should have requested dismissal of Count VI

22  because he had only constructive possession of the drugs, and because Government witness

23  Doris Cruz had "declared" the drugs were hers for her personal use.

24      As to the first argument, the Government asserts that the Petitioner would not have

25  succeeded under the theory of constructive possession. If trial counsel had argued that the

26  Petitioner constructively possessed the drugs, such evidence would have been inculpatory. "A

27  person has constructive possession when he or she knowingly holds ownership, dominion, or

28  control over the object and the premises where it is found." *United States v. Thongsy*, 577 F.3d

1036, 1041 (9th Cir. 2009) (quotation marks and citations omitted).  Whether a person has actual

or constructive possession is irrelevant.  "[C]ourts for the purposes of defining possession of

contraband do not distinguish between actual and constructive possession."  *United States v.*

*Wright*, 593 F.2d 105, 108 (9th Cir. 1979); *see also Nat'l Safe Deposite Co. v. Stead*, 232 U.S.

58, 67 (1914) ("[A]ctual possession and constructive possession . . . often so shade into one

another that it is difficult to say where one ends and the other begins.").  Had trial counsel made

this argument, he would have inculpated the Petitioner.

As to the second argument, the Petitioner contends that dismissal should have been

requested based on Cruz's testimony.  However, the Government correctly argues that this

assertion is contradicted by the record.  As discussed *infra*, Cruz and other witnesses testified

that the briefcase belonged to the Petitioner.  *See infra* at pages 22-23.  Cruz specifically testified

that she only saw the Petitioner, never anyone else, put things inside the briefcase.  *See* Docket

No. 413, Trial Transcript Volume XIV, p. 2539.  She did not testify that the methamphetamine

belonged to her.

A review of the record reveals that trial counsel made strategic decisions not to seek

dismissal on the basis of constructive possession or on the basis of Cruz's testimony, theories

which would have inculpated the Petitioner.   "Strategic choices made after thorough

investigation of law and facts relevant to plausible options are virtually unchallengeable."

*Strickland*, 466 U.S. at 690.  Both of the Petitioner's assertions are unsupported by the law and

the facts of the case.  The Petitioner cannot show defective performance under *Strickland*, as he

has not overcome the strong presumption that trial counsel provided "reasonable professional

assistance."  466 U.S. at 689.  Furthermore, the Petitioner cannot show prejudice, as he has not

demonstrated that even if trial counsel made these arguments, "there is a reasonable probability

that . . . the result of the proceeding would have been different."  *Id.* at 694.  Both contentions are

meritless, and "[t]he failure to raise a meritless legal argument does not constitute ineffective

assistance of counsel."  *Bauman*, 692 F.2d at 572.

The Petitioner has failed to demonstrate both deficient performance and prejudice.

Accordingly, the court finds that there was not ineffective assistance of counsel.

**7.   Whether trial counsel's failure to explore the possibility of a plea agreement established ineffective assistance of counsel**

The Petitioner challenges his trial counsel's failure to initiate plea negotiations with the Government prosecutor.  The Government contends that the Petitioner had no right to a plea agreement, and thus, his trial counsel could not be ineffective in failing to obtain one.

The United States Supreme Court has long recognized that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).  Accordingly, the Ninth Circuit has held that "a defendant does not have a constitutional right to a plea bargain." *United States v. Osif*, 789 F.2d 1404, 1405 (9th Cir. 1986) (citing *Weatherford*, 429 U.S. at 561).  The Petitioner cites no authority that a defense attorney has a duty to initiate plea negotiations.  Federal circuits have not found that such duty exists. *See e.g., Welch v. United States*, Docket No. 09-2873, 2010 WL 1538866, at *3 (3rd Cir. April 19, 2010) (unpublished) ("It is well-established . . . that counsel does not have an absolute obligation to pursue plea negotiations in every case."); *United States v. Huddy*, 184 Fed. Appx. 765, *767 (10th Cir. June 19, 2006) (unpublished) (rejecting the defendant's argument that her counsel was ineffective for failing to initiate plea negotiations).

Because trial counsel was under no duty to initiate plea negotiations, he was not required to request a plea agreement from the Government prosecutor.  Moreover, even if trial counsel had made this request, the prosecutor is not obligated to offer a plea bargain if he prefers to go to trial. *See Weatherford*, 429 U.S. at 561.  Such was the case here.  The prosecutor did not make a plea offer to the Petitioner and apparently preferred to go to trial.  Thus, trial counsel's failure to initiate or explore the possibility of a plea agreement from the Government does not constitute deficient performance.  The court finds that the Petitioner has not met the prong of deficient performance under *Strickland*, and accordingly, concludes that there was not ineffective assistance of counsel.

**8.   Whether trial counsel's failure to request jury sequestration amounts to ineffective assistance of counsel**

The Petitioner next asserts that trial counsel was ineffective because counsel should have

1  filed a motion to sequester the jury, arguing that there was a "massive amount of pretrial

2  publicity." He contends that his attorney should have anticipated that in Guam's small

3  community, there would have been considerable negative publicity. Although not articulated by

4  the Petitioner, he appears to argue that the news media reports give rise to a presumption of

5  prejudice or demonstrate actual prejudice. He suggests that if the jury had been sequestered,

6  then he would not have been convicted.

7        The Government argues that the record reveals that the jury had been instructed each day

8  not to read or watch news stories concerning the trial, and it is presumed that the jury obeyed the

9  court's instruction. *See* Docket No. 521. The Government also asserts that the Petitioner has

10  failed to allege any facts to support this argument that there was prejudice, and contends that the

11  Petitioner has not established fundamental unfairness in the decision not to sequester, which is

12  the standard for jury sequestration adopted by the Ninth Circuit in *Powell v. Spalding*, 679 F.2d

13  163, 166 (9th Cir. 1982).

14        To evaluate the Petitioner's argument for sequestration, the court first addresses the

15  Petitioner's contention that he had been prejudiced by the news reports. As discussed *supra*, at

16  pages 12-13, the Petitioner must "show that prejudice should be presumed or that actual

17  prejudice existed." *Turner*, 281 F.3d at 865. This court previously concluded that the Petitioner

18  not only failed to satisfy the three-factor test in *Daniels v. Woodford*, 428 F.3d 1181, for

19  application of the presumption of prejudice, but he also failed to demonstrate actual prejudice as

20  a result of the news coverage.

21        The court next recognizes that, first and foremost, a criminal defendant does not have the

22  right to a sequestered jury. *See id.* at166 n.3. The decision to sequester a jury is within the trial

23  court's discretion. *See United States v. Dufur*, 648 F.2d 512, 513 (9th Cir. 1980) (citing *Frame*

24  *v. United States*, 444 F.2d 71, 72 (9th Cir.), cert. denied, 404 U.S. 942 (1971)). Even assuming

25  *arguendo* that counsel had in fact sought, but was denied sequestration, the Petitioner has not

26  demonstrated that the decision not to sequester the jury resulted in fundamental unfairness, in

27  accordance with *Powell*, 679 F.2d 163, or in actual prejudice to his right to a fair trial. *See*

28  *United States v. Floyd*, 81 F.3d 1517, 1528 (10th Cir.1996). His arguments seems to be that if

1  the jurors had been sequestered, they would not have been prejudiced against him and would not

2  have convicted him. The Petitioner does not acknowledge the mountain of evidence presented

3  during the trial that resulted in his conviction. In addition, he does not discuss the court's

4  frequent admonitions to the jury not to read or watch news reports about the trial. He cannot

5  overcome the strong presumption that he received effective assistance from trial counsel, and he

6  does not demonstrate that the outcome would have been different. The Petitioner fails to prove

7  both deficient performance and prejudice required under the two-prong test set forth in

8  *Strickland*. Accordingly, the court finds there was not ineffective assistance of counsel.

9  **9. Whether trial counsel's failure to object to the prosecutor's statements to**

10  **the jury regarding the special allegations constitutes ineffective assistance of counsel**

11  The Petitioner next argues that his trial counsel was ineffective when he failed to object

12  or move for a mistrial because of statements made by the Government prosecutor regarding the

13  special allegations. He contends it was unfair for the prosecutor to present argument as to the

14  special allegations. The Government counters that it was proper for the prosecutor to argue an

15  issue which had been charged in the indictment.

16  To succeed on this claim, the Petitioner must show both deficient performance by his trial

17  counsel and that such deficient performance prejudiced his defense. *See Strickland*, 466 U.S.

18  668. Furthermore, the Petitioner must overcome the strong "presumption that, under the

19  circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689

20  (citation and quotation marks omitted).

21  The Petitioner seemingly contends that in making these statements, the prosecutor

22  attempted to influence the jurors' mind set, and therefore, the jury *may* have been influenced by

23  these statements to convict him. "Such speculation is plainly insufficient to establish prejudice."

24  *Gonzalez v. Knowles*, 515 F.3d 1006, 1016 (9th Cir. 2008). In arguing that his trial counsel erred

25  in failing to challenge the facts of the case as argued by the prosecutor, the Petitioner does not

26  make any reference to the overwhelming evidence presented against him that was considered by

27  the jury. Again, he offers mere speculation. The court finds such speculation does not overcome

28  the strong presumption that Petitioner's trial counsel "rendered adequate assistance," *Strickland*,

466 U.S. at 690, and thus, the court finds the Petitioner has not demonstrated deficient

performance. Accordingly, the court finds that the Petitioner has not shown he received

ineffective assistance of counsel in this regard.

### 10. Whether trial counsel's failure to elicit certain testimony from a Government witness amounts to ineffective assistance of counsel

The Petitioner next asserts that trial counsel failed to "bring" testimony from Government

witness Doris Cruz ("Cruz") that 21 grams of methamphetamine seized from her was for her

personal consumption. Specifically, he argues that evidence from the trial showed that Cruz's

testimony reveals that she "took responsibility" for the 21 grams of methamphetamine, and that

she "declared the drug belong[ed] to her and that was for her personal consumption." Docket

No. 510. The Government points out that Cruz never testified the methamphetamine was hers

for her personal use.

Trial counsel is "strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S.

at 690. Thus, the Petitioner must overcome the "heavy burden of proving that counsel's

assistance was neither reasonable nor the result of sound trial strategy." *Matylinsky*, 577 F.3d at

1091 (quoting *Murtishaw*, 255 F.3d at 939).

The trial record does not support the Petitioner's contention. Cruz testified that the

Petitioner was at a church for his cousin's wedding, and "[the Petitioner] had those guys tell me

to get his briefcase, his cell phones, and his clothes" from his home in Yona. Docket No. 413,

Trial Transcript Volume XIV, p. 2538. The police were conducting a raid on the Petitioner's

home and had conducted a roadblock of the street to prevent vehicles from entering or leaving

the area during the execution of the raid. *See* Trial Transcript Volume V, pp. 1003-06; Docket

No. 413, Trial Transcript Volume XIV, p. 2541. Cruz testified that she allowed the police to

search the car, and they found drugs and drug paraphernalia in the briefcase and on her person.[4]

---

[4] Although Cruz stated that the drugs were "[i]n my briefcase" and "on myself," Docket No. 413, Trial Transcript Volume XIV, p. 2542, a closer look at Cruz's testimony reveals that she is referring to the briefcase that belonged to the Petitioner, which was Government Exhibit 38 during

*See* Docket No. 413, Trial Transcript Volume XIV, p. 2542. Guam Police Department Officer

Raymond Terlaje testified that he retrieved a purse, toiletry bag and briefcase from inside the car

Cruz was driving. *See* Trial Transcript Volume V, pp.1011-12, 1015. Contained inside the

purse and the toiletry bag were drugs (cocaine and methamphetamine), drug paraphernalia and a

firearm and ammunition. *See* Transcript Volume V, pp. 1013-23; Transcript Volume XII, pp.

2277-2278. Officer Barbara Benavente testified that upon conducting a patdown of Cruz, she

recovered drug paraphernalia. Trial Transcript Volume V, pp. 1031-34. Cruz admitted to

owning the drug paraphernalia, as well as the purse and toiletry bag. *See* Docket No. 413, Trial

Transcript Volume XIV, p. 2544-47; Docket No. 411, Trial Transcript Volume XII, p. 2277

The Petitioner's specific claim, however, relates to the briefcase, which contained, *inter

alia*, $9,100 cash, two .22 caliber handguns and a ziplock bag of 21.19 grams of

methamphetamine that was 96 percent pure. Trial Transcript Volume V, pp. 1015, 1044, 1048-

49. Contrary to the Petitioner's argument, Cruz did not testify that she owned the drugs in the

briefcase. Rather, Cruz testified it belonged to the Petitioner and that she never saw anyone

other than the Petitioner put anything inside the briefcase. *See* Docket No. 413, Trial Transcript

Volume XIV, p. 2539. She also testified that she did not have the combination to the briefcase

and never put anything inside the briefcase. *See* Docket No. 413, Trial Transcript Volume XIV,

p. 2539. Nothing in Cruz's testimony supports the Petitioner's argument that Cruz "declared"

the drugs in the Petitioner's briefcase were hers and for her personal use.

It is not ineffective assistance of counsel if an attorney fails to raise a meritless argument.

*See Bauman*, 692 F.2d at 572. Cruz's testimony directly contradicts the Petitioner's argument.

The Petitioner fails to overcome the strong presumption that he received adequate assistance

from trial counsel. *See Strickland*, 466 U.S. at 689. The court finds that trial counsel's

performance was not deficient, and accordingly, concludes there was not ineffective assistance of

---

the trial. Other witnesses testified that the briefcase belonged to the Petitioner, including his wife
Katrina Cabaccang. *See* Trial Transcript Volume II, pp. 334-35. Witness Franklin Alcantara
testified that the briefcase (Government Exhibit 38) was the kind of briefcase he had seen in the
Petitioner's residence, and that he saw the Petitioner remove money from it. *See* Docket No. 411,
Trial Transcript Volume XII, p. 2160.

1    counsel.

**11.    Whether trial counsel's failure to request a mistrial after certain media reports constitutes ineffective assistance of counsel**

The Petitioner next argues that trial counsel was ineffective when he did not request a mistrial after a television station reported that the drugs and drug proceeds stemming from the case were the Petitioner's property, and that the Petitioner was involved in two unsolved murders. He also refers to a newspaper article on drug distribution activity on island that mentioned the Petitioner as being responsible for murders and identified him as being an alleged leader and organizer of the drug conspiracy. *See* Docket No. 525. The Petitioner contends these news reports, published before the start of the trial, may have influenced the jury. Although not precisely articulated, the Petitioner argues that the news reports prejudiced his case. The Government concedes that one news report covering the trial was discussed by the court and counsel outside of the jury, but that the trial judge determined that the news coverage had no direct correlation to the trial. *See* Docket No. 522; Trial Transcript XVI, pp. 2844-2852.

The court recognizes the strong presumption that must be afforded to trial counsel's conduct, and that "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. 689. Here, the Petitioner contends that his trial counsel's performance was deficient because he did not request that the court inquire into whether the jurors were aware of these news stories, and thus whether the publicity had prejudiced the case. "The prejudicial effect of pervasive publicity is tested under the presumed prejudice or the actual prejudice standards." *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1988).

The court finds no grounds to warrant a presumption of prejudice. As discussed above, the Ninth Circuit has stated that: "[t]hree factors should be considered in determining presumed prejudice: (1) whether there was a 'barrage of inflammatory publicity immediately prior to trial, amounting to a huge ... wave of public passion'; (2) whether the news accounts were primarily factual because such accounts tend to be less inflammatory than editorials or cartoons; and (3) whether the media accounts contained inflammatory or prejudicial material not admissible at trial.'" *Daniels*, 428 F.3d at 1211 (quoting *Ainsworth*, 138 F.3d at 795). Applying these factors

to the news accounts relied upon by the Petitioner reveal that the accounts do not appear to be such "inflammatory" publicity amounting to a "wave of public passion." Further, the Petitioner himself conceded they were primarily factual news reports. Lastly, nothing in the record indicates that the accounts contained inflammatory material that was inadmissible. The Ninth Circuit has held that: "Prejudice is presumed when the record demonstrates that the community where the trial was held was saturated with prejudical and inflammatory media publicity about the crime." *Harris*, 885 F.2d at 1361. On the basis of the news reports cited by the Petitioner, the record in this case does not reveal a community that was "saturated" with prejudicial and inflammatory publicity. *Id.* Therefore, this case is not that "extreme instance" where prejudice should be presumed. *Daniels*, 428 F.3d at 1211.

Further, the court finds that the Petitioner has not shown actual prejudice. The Petitioner contends that his trial counsel should have made a motion for mistrial to determine whether the publicity affected the jurors. This is not the standard to be applied here. "To determine whether actual prejudice existed to deny defendant his right to a panel of impartial, indifferent jurors, a court must determine if the jurors demonstrated actual partiality or hostility that could not be laid aside." *Harris*, 885 F.2d at 1363 (citation and quotation marks omitted). Here, the Petitioner does not present any evidence of actual partiality or hostility. In fact, he concedes that "it was never established" that there was actual prejudice. Docket No. 525, p. 84.

The Petitioner has not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Furthermore, he does not show that the outcome of his trial would have been different, and thus he cannot satisfy the "prejudice prong" under *Strickland*. *See id.* at 697. The court finds that the Petitioner has not demonstrated deficient performance and prejudice and thus has not proved that he received ineffective assistance of counsel.

### 12. Whether trial counsel's failure to investigate and properly prepare for trial amounts to ineffective assistance of counsel

The Petitioner argues that in general, his trial counsel failed to investigate the case and prepare for the trial. More specifically, he asserts that trial counsel did not present a credible

1   defense, such as evidence of the Petitioner's substance abuse problem; did not hire an investigator;

2   and did not personally review all the evidence the Government was going to present.

3   The Government requests the court reject this argument, because, *inter alia*, the

4   Petitioner has not stated with particularity the further investigation that should have been

5   conducted, the evidence his trial counsel failed to discover, and the effect of such evidence on

6   the outcome of the trial.

7   In analyzing trial counsel's performance, this court recognizes that "[t]here are countless

8   ways to provide effective assistance in any given case.  Even the best criminal defense attorneys

9   would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689.  A close look

10  at the record reveals that trial counsel had prepared for the trial, and reviewed the evidence the

11  Government was going to present.  He conducted cross-examination of witnesses, including the

12  Government informants, and challenged their testimony and evidence.  Trial counsel made a

13  two-and-a-half hour long closing argument that demonstrated his knowledge of the case, his

14  familiarity with the witnesses' testimony, the evidence, and the theory advanced by the

15  Government. Contrary to the Petitioner's assertion, the record reveals that trial counsel had

16  prepared for the trial and provided the Petitioner with adequate representation. *See Matylinsky*,

17  577 F.3d at 1092 (stating that conduct expected of counsel is "only what is constitutionally

18  compelled.'") (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  The Petitioner also

19  disagreed with the theory advanced by trial counsel, and believes it would have been a better

20  defense to present mitigating evidence of a drug abuse problem.  This is clearly a strategic

21  decision made by trial counsel, and the court acknowledges the "strong presumption that

22  counsel's conduct . . . might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.  As

23  guided by *Strickland*, the court defers to trial counsel's strategic decisions.

24  Upon review of the record, the court finds that the Petitioner has not shown that his trial

25  counsel's actions "fell below the wide range of professional competent assistance." *Id.*  The

26  Petitioner has not overcome the presumption that his counsel provided adequate representation.

27  Accordingly, the court finds there was not ineffective assistance of counsel.

28  ///

**13. Whether counsels' failure to argue that the original sentence was unconstitutional proved to be ineffective assistance of counsel**

The Petitioner contends that his counsel in his trial and later, his counsel in his first appeal, were ineffective because they did not argue that his original sentence was unconstitutional as a result of the trial judge's failure to impose the mandatory term of supervised release. The Government points out that the Judgment entered after the resentencing reflects the ten-year term of supervised release. A review of the sentencing hearing by the trial judge reveals that after sentencing the Petitioner to a term of life imprisonment, the judge did not impose a term supervised release.[5]

Because he raises this issue in an ineffective assistance of counsel claim, the Petitioner must demonstrate that his counsels' performance was deficient and, and that such performance resulted in prejudice to his defense. *See id.* at 687. With regard to this specific argument, however, the court examines only whether there was prejudice caused by the alleged error by counsel. The court in *Strickland* recognized: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697.

A review of the facts of the case reveals that even if these issues had been raised, the outcome would not have been different. The Petitioner appealed his conviction, and his case was remanded for resentencing. At the resentencing, the court imposed a ten-year term of supervised release: "A ten-year term of supervised release shall follow the sentence on Count Six." *See* Transcript of May 6, 2005, p. 51. After the first appeal and upon resentencing, the Judgment entered reflected the imposition of supervised release. Thus, because the Judgment entered reflected the ten-year term of supervised release, the Petitioner cannot demonstrate prejudice. "An error by counsel, even if professionally unreasonable, does not warrant setting

---

[5] As a practical matter, it may appear unnecessary to sentence a defendant to a term of supervised release following the imposition of a life sentence, but such has been done in other cases. *See e.g., United States v. Ennis*, No. 92-30218, 1993 WL 272472, 1 (9th Cir. 1993) (unpublished) (district court sentenced defendant to life imprisonment, followed by a consecutive term of five years imprisonment and five years supervised release).

1  aside the judgment of a criminal proceeding if the error had no effect on the judgment."

2  *Strickland,* 466 U.S. at 691.

3  Therefore, not only has the Petitioner failed to demonstrate prejudice, but this argument

4  is without merit.   "The failure to raise a meritless legal argument does not constitute ineffective

5  assistance of counsel."  *Bauman,* 692 F.2d at 572.  Accordingly, the court finds there was not

6  ineffective assistance of counsel in this regard.

7  **B.  The law regarding procedural default**

8  In addition to challenging the claims of ineffective assistance of counsel made by the

9  Petitioner, the Government also contends that the Petitioner procedurally defaulted the following

10  two claims by failing to raise them on direct appeal:  1) trial counsel's failure to challenge or

11  object to the prosecutor's statements regarding the special allegations; and 2) trial counsel's

12  failure to make a motion for mistrial on the basis of certain news media reports.

13  "Where a defendant has procedurally defaulted a claim by failing to raise it on direct

14  review, the claim may be raised in habeas only if the defendant can first demonstrate 'cause' and

15  'actual prejudice,' or that he is 'actually innocent.'"  *Bousley v. United States,* 523 U.S.614, 622

16  (1998) (citations omitted).  *See also United States v. Skurdal,* 341 F.3d 921, 925 (9th Cir. 2003)

17  ("If a criminal defendant could have raised a claim of error on direct appeal but nonetheless

18  failed to do so, he must demonstrate both cause excusing his procedural default, and actual

19  prejudice resulting from the claim of error.") (quoting *United States v. Johnson,* 988 F.2d 941,

20  945 (9th Cir. 1993)).  Therefore, the court examines whether the Petitioner has demonstrated

21  cause and actual prejudice, or whether he is actually innocent.

22  **1.  Failure to object to statements made by the prosecutor regarding the**

23  **special allegations**

24  The Petitioner first argues that the Government prosecutor erred when he made

25  statements regarding the special allegations.  Because he failed to raise this issue in his direct

26  appeal, the Petitioner procedurally defaulted this claim.

27  Upon examination of the case, the Petitioner has not demonstrated cause excusing the

28  default or actual prejudice.  "Generally, to demonstrate 'cause' for procedural default, an

1  appellant must show that 'some objective factor external to the defense' impeded his adherence

2  to the procedural rule." *Skurdal*, 341 F.2d at 925. The Petitioner does not explain the cause, that

3  is, the "objective factor," that prevented him from raising this argument on direct appeal. The

4  argument was not raised in his direct appeal. The court is cognizant that "the mere fact that

5  counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim

6  despite recognizing it, does not constitute cause for a procedural default." *Murray v. Carrier*,

7  477 U.S. 478, 486 (1986). Furthermore, Petitioner's argument regarding "actual prejudice" is

8  based solely on his speculation that the jury "may have been influenced by the prosecutor's

9  statements." Docket No. 525, p. 69. However, the possibility of influence on the jury does not

10  amount to "actual prejudice." In sum, the Petitioner has not demonstrated cause or actual

11  prejudice.

12  In addition, the Petitioner fails to discuss the alternative method of excusing procedural

13  default, which is demonstrating that he is "actually innocent" of the offense. *See Bousley*, 523

14  U.S. at 622. The Petitioner bears the burden of showing that "in light of all the evidence, . . . the

15  trier of the facts would have entertained a reasonable doubt of his guilt." *Id.* at 624. The

16  Petitioner has not shown that the trier of fact would have entertained reasonable doubt. Here, the

17  jury heard from 44 Government witnesses, saw exhibits and written stipulations as well as other

18  documentary evidence, and ultimately returned a unanimous verdict finding the Petitioner guilty

19  on all counts. The Petitioner does not argue, and the court does not find, that he is "actually

20  innocent." *See Bousley*, 523 U.S. at 622. Accordingly, the court finds that the Petitioner has

21  procedurally defaulted this claim.

22  **2. Motion for mistrial**

23  Next, the Government asserts that the Petitioner procedurally defaulted his argument as

24  to the motion for mistrial by failing to raise it in his direct appeal. As discussed above, a

25  defendant procedurally defaults a claim by failing to raise it on direct review, and such claim

26  may be raised in habeas only if the defendant can first demonstrate cause and actual prejudice, or

27  that he is actually innocent." *Bousley*, 523 U.S. at 622. Therefore, the court examines whether

28  the Petitioner has demonstrated cause and actual prejudice, or whether he is actually innocent.

The Petitioner has not shown cause to excuse his default; he offers no "objective factor" that "impeded his adherence to the procedural rule." *Skurdal*, 341 F.2d at 925. This argument was simply not raised in the appeal. Again, the fact that counsel did not "recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." *Murray*, 477 U.S. at 486. Further, there is no evidence of "actual prejudice." The Petitioner speculates that the jury may have heard or been exposed to the media coverage. Speculation, however, is insufficient to overcome the presumption that the jury complied with the court's daily admonitions not to listen or read or view any media coverage of the trial. *See Shotwell Mfg. Co. v. United States*, 371 U.S. 341 (1963).

The Petitioner does not discuss the alternative method of excusing procedural default; that is, he does not argue he is "actually innocent" of the offense. *See Bousley*, 523 U.S. at 622. He has not shown that the trier of fact would have entertained reasonable doubt. Again, the Government's case against the Petitioner consisted of days of trial testimony by witnesses, and documentary evidence including, *inter alia*, laboratory reports, stipulations, receipts, cash and cashier's checks. At the conclusion of the trial, the jury returned a unanimous verdict finding the Petitioner guilty of all counts. The Petitioner has not argued, and the court does not find, that he is "actually innocent." *See id.* The court finds that the Petitioner has procedurally defaulted on this claim as well.

**III.   CONCLUSION**

For the foregoing reasons, the court finds that the Petitioner has failed to overcome the "strong presumption" that the conduct of his trial, resentencing and appellate counsel "falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, and has failed to demonstrate that the outcome of his trial would have been different. *See id.* at 697. Consequently, as to each of the grounds argued by the Petitioner, the court concludes that he has not demonstrated deficient performance and prejudice and thus has not proved that he received ineffective assistance of counsel. The court further finds that the Petitioner procedurally defaulted two of these claims.

///

1    Accordingly, the Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or

2  Correct Sentence is **HEREBY DENIED.** Furthermore, the court does not find that the Petitioner

3  "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

4  Therefore, the court will **NOT** issue a certificate of appealability. *See* Rule 11 of the Rules

5  Governing Section 2255 Proceedings for the Untied States District Courts.

6    **SO ORDERED**.

7

8                                              **/s/ Frances M. Tydingco-Gatewood**
                                                     **Chief Judge**
9                                              **Dated: Jul 28, 2010**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28